IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

ORILEE MASON,

                Plaintiff,              OPINION AND ORDER

    v.                             07-cv-191-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

---

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Orilee Mason challenges the commissioner's determination that she is not disabled and therefore not eligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d). She asks this court to reverse the commissioner's decision and remand it for further proceedings on the ground that the administrative law judge ignored or overlooked significant medical evidence, including reports from her treating psychologist and psychiatrist, supporting her claim that she is disabled as a result of depression, anxiety and impaired neurocognitive functioning. Although this is a close case, I decline to remand it because the evidence favoring the commissioner's position is so substantial that the result

1

would not change even if the administrative law judge had expressly considered the evidence.

From the administrative record, I make the following findings of fact.

FACTS

A.  Background

Plaintiff was born on June 21, 1945, making her 58 years old at the time she applied for disability insurance benefits.  She completed high school and two years of college.  She has past relevant work as a general office clerk, office helper and receptionist.  She was employed by the Wisconsin Department of Corrections for 19 years, most recently as a Program Assistant II.  Plaintiff has a long-standing history of manic depressive illness and depression, having been treated for those impairments since at least 1992.  Plaintiff has been treated by Dr. David Crawford, a psychiatrist, and by Sandra Eisemann, a licensed psychologist.  Eisemann has been plaintiff's therapist for approximately 14 years.

B.  Medical Evidence

In early to mid-2003, plaintiff began having cognitive problems, including difficulty finding and spelling words, slowed speech, dizziness and feelings of being "off balance," decreased concentration and an inability to complete tasks both at home and at work. Plaintiff's primary physician referred her to a neurologist, who was unable to find anything

2

to explain plaintiff's symptoms.  (MRI and MRA scans and an EEG were all normal.) Plaintiff's problems became so severe that on August 28, 2003, her primary physician authorized a medical leave of absence from work.

1.  Neuropsychological evaluations

On September 10, 2003, Jerry Halsten, a licensed psychologist, performed a neuropsychological evaluation of plaintiff.  Halsten administered a battery of tests to measure plaintiff's cognitive functioning, including the Wechsler Adult Intelligence Scale-III, the California Verbal Learning Test and the Grooved Pegboard Test, as well as tests to assess plaintiff's symptoms of anxiety and depression.  Plaintiff performed poorly on the cognitive tests, demonstrating slowed mental processing speed, mild-to-moderate memory impairment and mild-to-moderate impairment of her verbal fluency.  Tests designed to measure subjective symptoms indicated that plaintiff was suffering from a rather severe depressive episode.

Dr. Halsten offered the opinion that plaintiff was suffering from a neurocognitive disorder related to severe depression that was likely to prevent her from returning to her previous level of occupational functioning. Dr. Halsten recommended that plaintiff undergo intensive psychotherapy to help combat her depression and have a follow up neuropsychological evaluation in three to 12 months.

3

Gordon Herz, Ph.D., performed a follow-up evaluation of plaintiff in January 2004. (The report from this evaluation is not in the record; however, it is summarized in the report of another psychologist, William Merrick.  AR 276-280.)  Herz concluded that plaintiff continued to have "measurable dysfunction in general intellectual functioning mostly attributable to reduced perceptual reasoning and motor responding, in simple and complex attention, and in aspects of memory."  He noted, however, that plaintiff's memory functioning had improved since her first evaluation with Halsten.

Plaintiff applied for Disability Insurance Benefits on November 6, 2003, alleging that she was disabled from severe depression and anxiety and diminished mental functions, including memory loss, speech difficulties and an inability to process language.  As part of its evaluation of plaintiff's claim, the local disability agency referred plaintiff to William Merrick, Ph. D., for psychological evaluation and testing on March 18, 2004.  AR 276-280. Merrick detected no abnormalities during mental status examination, noting that plaintiff's speech was of a normal rate, rhythm, volume, amount and articulation and plaintiff was able to laugh throughout the interview and testing.  However, plaintiff was extremely slow to complete registration materials and in her responses to formal questions and tasks required of her during psychometric testing.  Merrick observed that plaintiff's "[r]esponse latencies were extraordinarily long, and she often sighed, grunted, and in sundry other nonverbal ways, expressed that she required expenditure of Herculean efforts to complete requested

4

tasks."  AR 278-79.  He also noted that plaintiff's answers to questions "were often punctuated with 'I think,' 'Maybe; I don't know for sure,' and other similar phrasings of the uncertainty she had of her responses."  AR 279.

Merrick administered select subtests of the Wechsler Memory Scale–III.  Plaintiff's scores were similar to her scores on the first two administrations of the test by Halsten and Herz.  Merrick also administered the Word Memory Test, a test designed to determine whether the taker might be exaggerating his or her symptoms.  Plaintiff's scores on the Word Memory Test were in a range indicating probable malingering.  (Plaintiff's scores were lower than those from samples of patients with severe traumatic brain injury.)  Merrick found that plaintiff's scores were "strong evidence of a conscious attempt to misrepresent her true cognitive ability in memory testing."  AR 279.  Merrick noted other evidence of malingering, including anomalous response patterns on the Wechsler Memory Scale; her dramatic presentation, which was filled with more energy than plaintiff claimed to have available to her; and her representation of facts that were inconsistent with facts available from the records.  Merrick noted that although plaintiff's history, records and presentation supported the conclusion that plaintiff had major depression and anxiety, he was unable to assess the intensity of those conditions because of plaintiff's "pattern of deceptive reporting."  AR 280.  Merrick raised the possibility that plaintiff might be lying because she had a psychological need to assume the sick role, in which event plaintiff would be diagnosed with Factitious

5

Disorder, as opposed to a desire to obtain disability benefits, in which case plaintiff would merely be malingering and not suffering from any psychopathology.

Assessing plaintiff's abilities to perform work-related tasks, Merrick offered the opinion that plaintiff had average-to-moderate impairment in her ability to maintain attention, concentration and pace but was capable of understanding, remembering and carrying out simple instructions and relating appropriately to co-workers and supervisors. Merrick could not assess plaintiff's ability to withstand routine work stresses and adapt to changes, but he predicted that it was mildly impaired.

Approximately a year later, on April 28, 2005, plaintiff was reevaluated by Halsten. Plaintiff continued to live alone. She owned two duplexes and managed them with the help of her children. Plaintiff's daughter, who accompanied her to the evaluation, described plaintiff as fully independent. Plaintiff managed her own finances with the assistance of automatic payments through her bank. She did her own housekeeping, prepared simple meals, drove a car and did her own shopping. Plaintiff reported that it took more effort for her to do things, saying that she was forgetful, often got sidetracked and had problems with writing, right-left orientation and word-finding.

Halsten observed that plaintiff was alert and fully oriented and had adequate grooming and hygiene. She had a somewhat unsteady gait and dropped her coffee cup three times during the clinical interview. Her speech was normal in rate and tone but she paused

6

while speaking, seemed to lose her train of thought, occasionally had trouble finding a word and had difficulty providing clear or concise answers to direct questions.  Her thought process and responses were tangential and circumstantial, making it difficult for Halsten to gain clear information from her.

Halsten again administered a battery of neurocognitive tests.  Results again showed that plaintiff's neurocognitive profile was "abnormal and characterized by continued visuomotor slowing and slowing of mental processing speed."  Plaintiff demonstrated prominent difficulties with tasks requiring planning and self-organization and with upper extremity fine motor speed and dexterity.  Plaintiff did show improvement, however, in the area of verbal memory testing.  Consistent with the findings from the September 2003 evaluation, plaintiff continued to report severe depressive symptoms, although her anxiety symptoms seemed to have subsided to within the mild range of severity.

Halsten noted that although Merrick had found during his evaluation that plaintiff might have made a conscious attempt to perform poorly during formal testing, "the current evaluation provides no evidence of consistent suboptimal performance."  Halsten recommended that plaintiff use compensation strategies to help her cope with her slowed processing speed and attention difficulties, such as scheduling extra time to complete more mentally challenging tasks, using checklists and a planner and minimizing verbal and auditory distractions in her home.

2.  Dr. Crawford's opinion

Plaintiff's treating psychiatrist, Dr. Crawford, completed several forms in connection with plaintiff's applications for employee disability benefits.  On March 22, 2004, he indicated that plaintiff had severe mental limitations, most notably a moderate loss of her short term memory and concentration.  Dr. Crawford remarked that plaintiff probably was suffering from "multi-infarct dementia," a deterioration in mental condition caused by strokes, although he noted that there was no CT scan evidence to support his opinion.  Dr. Crawford appeared to doubt that plaintiff's memory and concentration problems were a product of her depression, remarking that plaintiff had not had similar symptoms in the past even though she had been much more depressed.  AR 493-94.

On May 5, 2004, Crawford completed a Physician's Report of Patient's Disability on which he reported that plaintiff had persistent depression with progressive worsening of her short term and long term memory, disorganization, poor concentration and decreased reading and auditory comprehension.  He noted that plaintiff had also had some episodes of severe confusion suggestive of "TIA's," or mini-strokes.  He offered his opinion that plaintiff's current medical condition prevented her from engaging in any substantial gainful activity.  AR 491-92.

On June 18, 2004, he indicated that plaintiff was suffering from major depression that was recurrent and moderate in severity.  He also diagnosed plaintiff with vascular

8

dementia (an impairment in cognitive function caused by blood vessels that feed the brain), with episodic delirium.  He determined that plaintiff had moderate to severe limitations in several work-related areas, including the ability to comprehend, carry out and remember instructions; perform simple and repetitive tasks; and maintain an appropriate work pace. AR 485-87.

### 3.  Eisemann's opinion

On February 22, 2005, plaintiff's psychotherapist, Eisemann, completed forms indicating that plaintiff suffered from recurrent cyclothymic depression and generalized anxiety.  In Eisemann's opinion, plaintiff's impairments resulted in marked restriction of her activities of daily living; mild to moderate restriction in her social functioning; marked impairment in her concentration, persistence and pace; and one or two episodes of decompensation, each lasting for at least two weeks.  Eisemann noted that plaintiff had very poor organization and concentration, slow processing, confusion, trouble starting or completing tasks and that her symptoms would interfere with her ability to attend work on a regular basis.  AR 545-550.

4.  State agency physicians' opinions

In March 2004, state agency consulting physician Timothy Henke, M.D., reviewed the record and determined that plaintiff had a severe affective disorder, anxiety-related disorder and somatoform disorder.  Assessing the degree of plaintiff's functional limitations resulting from her impairments (the "B" criteria of the listings), Dr. Henke concluded that plaintiff had mild restriction of activities of daily living; mild to moderate difficulties in maintaining social functioning; moderate difficulties in maintaining persistence or pace; and no episodes of decompensation.  Translating those limitations into the work context, Dr. Henke offered the opinion that plaintiff would have moderate limitations in only a few areas, including the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors and respond appropriately to changes in the work setting.   In November 2004, a second state agency consultant affirmed Dr. Henke's conclusions.  AR 498-514.

C.  Administrative Proceedings

Plaintiff applied for Disability Insurance Benefits on November 6, 2003, alleging that she was disabled from severe depression and anxiety and diminished mental functions, including memory loss, speech difficulties and an inability to process language.  After two

10

denials by the local disability agency, plaintiff requested a *de novo* hearing before an administrative law judge.  A hearing was held before Administrative Law Judge Arthur Schneider on December 20, 2005, at which plaintiff and a vocational expert testified. Plaintiff was represented at the hearing by a non-attorney representative.

Plaintiff testified that she was formerly employed by the Wisconsin Department of Corrections as a program assistant.  Her duties included renting motel rooms on behalf of new prison releases who had no place else to stay, performing some computer work, front desk reception and some filing.  She said that in August 2003, she began having increased depression and anxiety because she often forgot things at work, such as verbal instructions and phone numbers, and could no longer complete work tasks as quickly as she had done in the past.  Plaintiff testified that she also began having "spells" of unknown origin that caused neurological difficulties such as forgetting words or thoughts.  She said she is forgetful, so she has to carry an appointment book to remember appointments and has her monthly bills paid on-line.

Plaintiff said she lived alone in a duplex that she owned.  Her daughter lived next door in another duplex owned by plaintiff.  Plaintiff performed her own household chores, drove, did her own grocery shopping and prepared her own simple meals.  On a typical day, plaintiff got up, took her two dogs out, ate breakfast, and watched morning shows on television.  In the afternoon, she often spent time on the computer, checking email and

11

"looking up stuff."  She often napped for an hour to an hour and a half.  She had a boyfriend she went out with on weekends.

In response to a hypothetical question posed by the administrative law judge, a vocational expert testified that a person of plaintiff's age, education and past work experience who was limited to simple, routine, repetitive work would be unable to perform plaintiff's past work, which was semi-skilled.  However, he or she could perform a number of unskilled jobs, including general office clerk (30,000 jobs in Wisconsin), mail clerk (2,000 jobs), food preparer (60,000 jobs) and production work such as light and sedentary assembly (10,000 jobs).

On July 20, 2006, the administrative law judge issued a decision finding plaintiff not disabled.  Applying the commissioner's five-step sequential evaluation procedure for evaluating disability claims, 20 C.F.R.§ 404.1520, the administrative law judge found that plaintiff had not engaged in substantial gainful activity after her alleged onset date (step one);  she had the severe impairments of affective disorder and anxiety disorder (step two); her impairments singly or in combination did not meet or medically equal the criteria of any listed impairment (step three); plaintiff was unable to perform her past relevant work as an office clerk (step four); and plaintiff was able to make an occupational adjustment to a significant number of other jobs in the national economy, such as mail clerk (2,000 jobs); food preparer (60,000 jobs); and production or assembly worker (10,000 jobs).

As part of his evaluation at step four, the administrative law judge made a determination of plaintiff's "residual functional capacity," that is, the work-related tasks that plaintiff was capable of performing despite her impairments.  SSR 96-8p; 20 C.F.R. § 404.1545(a).  He found that plaintiff had no physical limitations but that she was limited mentally to work that was simple, repetitive and routine.  The administrative law judge reviewed the record in substantial detail, devoting 26 paragraphs to setting forth the various medical reports, progress notes and plaintiff's testimony.  He then made the following conclusory statements:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not supported by the evidence.

> [I] find[] the claimant has the following mental limitations set forth in "Part B" of the mental listings; "mild" restrictions of activities of daily living; "mild to moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence or pace and "no" episodes of decompensation.

The administrative law judge did not explain how he weighed the various medical opinions, how he arrived at his conclusions concerning the "B" criteria of the listings, why he found plaintiff's complaints not fully credible or how he arrived at the conclusion that plaintiff could perform simple, routine, repetitive work.

13

The administrative law judge's decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review.

OPINION

A.  Standard of Review

Unless the commissioner has committed an error of law, his determination that plaintiff was not disabled for purposes of receiving Social Security benefits is conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  In reviewing the commissioner's decision, the court conducts "a critical review of the evidence," considering both the evidence that supports the commissioner's decision as well as the evidence that detracts from it.  Clifford, 227 F.3d at 869.  However, the court cannot substitute its own judgment for that of the commissioner by reevaluating the facts or reweighing the evidence to decide whether the plaintiff is in fact disabled.  Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995).  Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's

14

decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff's primary contention on appeal is that the administrative law judge failed to comply with this last requirement, that is, he failed to build a sufficient bridge between the evidence and his conclusions that plaintiff did not meet the criteria of a listed impairment, that she retained the capacity to perform simple, routine, repetitive work and that her allegations of a complete inability to work were not credible. The rule that an agency must set forth its reasoning with such clarity to permit informed review flows from the principle that a "judicial judgment cannot be made to do service for an administrative judgment." SEC v. Chenery Corp., 318 U.S. 80, 88 (1943).

> [A] simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action . . .

Id. at 93-95.

15

It is difficult to argue with plaintiff's contention that the administrative law judge did a lackluster job complying with the minimal articulation requirement.  His decision is long on recitation and short on rationale, leaving this court largely on its own to determine the reasons underlying his conclusions.  Indeed, although the commissioner does not expressly concede this point, his resort to post-hoc arguments and "the record as a whole" to defend the administrative law judge's decision implies that the requisite reasoning is absent from the decision itself.  Nonetheless, the rule that a court may affirm an agency's decision only on grounds plainly invoked by the agency is not ironclad.  Courts may excuse an agency's failure to articulate its reasoning adequately when it is plain that the outcome would not change if the case was remanded.  Keys v. Barnhart, 347 F.3d 990, 994  (7th Cir. 2003)(harmless error doctrine applies to administrative decisions); Sahara Coal Co. v. Office of Workers Compensation Programs, 946 F.2d 554, 558 (7th Cir. 1991)("If the outcome of a remand is foreordained, [the court] need not order one").  As the court of appeals stated in Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989):

> So the administrative law judge's opinion is vulnerable.  But that is nothing new.  No principle of administrative law or common sense requires us to remand a case in quest of the perfect opinion unless there is reason to believe that remand might lead to a different result.

After careful consideration of the record and the parties' arguments, I am convinced that it would be pointless to remand it to the agency for more articulation.  As an initial

16

matter, although the administrative law judge's decision contains only two paragraphs that can be plainly described as "reasoning," his detailed coverage of the evidence offers some clues about his thought process.  The administrative law judge reviewed the reports of Merrick and Halsten in detail, noting not only their ultimate opinions about plaintiff's psychological functioning but also their observations of plaintiff, plaintiff's reported activities and her description of her symptoms.  He also reviewed progress notes from Eisemann as well as other health care providers.  The administrative law judge focused on records that indicated variously that plaintiff was walking four to five times a week and playing golf on the weekends, maintaining a food journal and trying to maintain her diabetic regimen, preparing her own meals, shopping for groceries, completing paperwork for her disability applications, organizing documents to present to her accountant and working on her computer on and off throughout the day.  The administrative law judge also noted plaintiff's testimony that in spite of her problems with forgetfulness, she was able to live alone with her two dogs, perform light housework, spend the afternoon on the computer, drive and go to movies with her boyfriend.  Finally, although the administrative law judge did not refer specifically to the opinions of the state agency physicians in his decision, his findings with regard to the "B" criteria of the listings parrot their findings exactly, indicating not only that he considered the opinions but also that he found them persuasive.

17

Overall, it is plain that the administrative law judge gave significant weight to the opinion of Merrick and to the opinions of the state agency physicians. His determination that plaintiff could perform simple, routine, repetitive work correlates with Merrick's opinion that plaintiff had average-to-moderately impaired ability to maintain attention, concentration and a steady work pace, no problems relating appropriately to co-workers and supervisors, no problems understanding, remembering and carrying out simple instructions and only mild impairment in her ability to withstand routine work stresses and adapt to changes. It correlates also with the similar findings of the state agency physicians. Although plaintiff argues that it is unclear how the administrative law judge accounted for Halsten's opinion, the only significant matter on which Halsten and Merrick disagreed was plaintiff's credibility. But even giving full credit to plaintiff's test scores and subjective complaints, Halsten did not offer any opinion about plaintiff's work abilities that was contrary to Merrick's. In his first report, Halsten indicated only that plaintiff would be unable to return to her "previous level of occupational functioning," which is consistent with the administrative law judge's conclusion that plaintiff would be unable to return to her past relevant work. In his second report, Halsten indicated only that plaintiff should use compensation strategies to help her cope with her slowed processing speed, attention and concentration difficulties, such as scheduling extra time to complete mentally challenging tasks, using checklists and a daily planner and minimizing distractions. These limitations

18

are not inconsistent with Merrick's assessment of plaintiff's abilities or with the administrative law judge's conclusion that plaintiff was capable of performing simple, routine repetitive work.  In short, it was harmless for the administrative law judge to fail to clearly explain the weight he gave to Halsten's opinion.

The most troubling omissions are the administrative law judge's failure to mention the opinions of Dr. Crawford, plaintiff's treating psychiatrist, and Eisemann, her psychotherapist, that plaintiff had functional limitations so severe as to meet the criteria of a listed mental impairment.  The administrative law judge should have discussed this evidence.  20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); Soc. Sec. Ruling 96-5 (opinions from medical sources on issues reserved to the Commissioner "must never be ignored" and adjudicator "must explain the consideration given to [a] treating source's opinion(s)").

Nonetheless, I am satisfied that the evidence would make no difference to the outcome.  Dr. Crawford's opinion that plaintiff's episodic confusion was the result of mini-strokes or vascular dementia was a rogue opinion not supported by any other evidence in the record.  Neither Merrick nor Halsten, although they tested plaintiff extensively, made any suggestion that plaintiff's mental lapses could be related to strokes. Further, as the administrative law judge noted in his recitation of the facts, all of the radiographic and other

19

studies that might indicate some type of organic brain dysfunction were normal. Indeed, even Dr. Crawford acknowledged on one report that there was "no CT scan evidence thus far" to support his opinion that plaintiff probably was suffering from multi-infarct dementia. AR 494. Finally, even plaintiff's therapist, Eisemann, who saw her more frequently, related plaintiff's cognitive problems to her depression and not to dementia or other organic cause. Because Dr. Crawford's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is contrary to all of the other reports in the record, remand for explicit consideration of that opinion would be a pointless waste of time and agency resources. Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006) (administrative law judge may reject treating physician's opinion if it is contrary to other well-supported evidence in record); 20 C.F.R. § 404.1527(d)(2). (For this same reason, there is no merit to plaintiff's argument that she meets the listing for organic mental impairments, Listing 12.02. That argument is supported solely by Dr. Crawford's opinion.)

Similarly, Eisemann's opinion regarding the severity of plaintiff's limitations is contradicted by substantial evidence in the record. Eisemann concluded that plaintiff had "marked" restriction in both her activities of daily living and her ability to concentrate and attend because of cognitive slowing, confusion, poor organization, trouble starting or finishing tasks and slow processing. AR 546. On another form, Eisemann indicated that plaintiff was "not able to concentrate, complete written tasks, accomplish computer tasks at

20

home" or "carry out expected tasks at home if [moderate] levels of organization are required." AR 549.  As the administrative law judge noted, however, plaintiff's daughter described her as "fully independent" and plaintiff acknowledged that she was able to maintain her own housekeeping, prepare her own meals, do her own shopping, care for her two dogs, work on her computer, go to movies with her boyfriend and drive a car.  These activities are not consistent with the "marked" restriction in daily activities found by Eisemann, but rather with the "mild" restriction found by the state agency physicians and adopted by the administrative law judge.  As for concentration, the administrative law judge cited progress notes from Eisemann that indicated that plaintiff's difficulties were related to the completion of relatively complex tasks, such as completing her paperwork for her disability application and organizing documents to present to her accountant.  It was not unreasonable for him to conclude that these limitations would not prevent plaintiff from performing the routine, repetitive unskilled jobs identified by the vocational expert.  See 20 C.F.R., Pt. 404, Subpt. P, App. 2, Sec. 201.00(h)(4)(i) (because most unskilled work requires working with things, as opposed to people or data, even illiterate persons can perform such work).

This leaves plaintiff's subjective complaints.  The administrative law judge's credibility determination reads as follows:

21

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not supported by the evidence.

According to Social Security Ruling 96-7p, "[i]t is not sufficient [for the administrative law judge] to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" Rather, the decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." It is questionable whether the administrative law judge's decision satisfies this standard. Nonetheless, remand is not warranted because no trier of fact reviewing this record could come to a different conclusion about plaintiff's credibility. Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006) (flaws in credibility analysis do not require remand if no conceivable way trier of fact could have made different credibility finding). Not only were plaintiff's allegations suspect in light of Merrick's damaging report, but the symptoms of which she complained were simply not of the sort that would preclude all work activity. Plaintiff's cognitive losses primarily affected her ability to perform tasks requiring moderate to high levels of organization and processing, such as completing disability applications, organizing tax documents and performing computer commands. In spite of her

memory lapses and problems staying on task, plaintiff was able to live independently, carry out regular activities of daily living, maintain a relationship with her significant other, work on the computer, manage her finances, watch movies, golf and manage two duplexes with the help of her daughter. This evidence, all of which was discussed in the administrative law judge's decision, provides ample support for the administrative law judge's finding that, to the extent plaintiff was alleging an inability to perform even simple, routine repetitive work, her allegations were not credible. As a final point, I note that the transcript of the disability hearing undercuts plaintiff's claim of a severe cognitive impairment, insofar as she was able to understand the administrative law judge's questions, answer them appropriately and intelligently and recall past events.

In sum, although the administrative law judge failed to discuss significant pieces of evidence contrary to his decision and failed to articulate his findings with the precision demanded by the commissioner's regulations, those omissions did not ultimately affect the outcome. As the court noted in <u>Stephens v. Heckler</u>, 766 F.2d 284, 287 (7th Cir. 1985), "the court reviews judgments, not opinions." Substantial evidence in the record, including plaintiff's own testimony about her activities, supports the administrative law judge's conclusion that she can perform simple, routine repetitive work in spite of her cognitive difficulties. The evidence the administrative law judge failed to discuss was entitled to little weight relative to the other evidence in the record. Plaintiff's remaining argument, that the

23

administrative law judge erred at step five in concluding that plaintiff had transferable skills, is meritless because all the jobs identified by the vocational expert were unskilled. 20 C.F.R. § 404.1565(a) (transferable skills not relevant to ability to perform unskilled work). Accordingly, remand is not appropriate.


ORDER

IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of Social Security, denying plaintiff Orilee Mason's application for disability insurance benefits, is AFFIRMED.


Entered this 28th day of March, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

24